UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | | |
|---|---|---|
| FLOYD PARKER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:25-cv-02143-MMM |
| | ) | |
| JONATHAN EK, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

Plaintiff, proceeding pro se and presently incarcerated at Lawrence Correctional Center, alleges Defendants violated his Eighth Amendment rights through deliberate indifference to his serious medical needs while he was incarcerated at Danville Correctional Center.

**I.     Motion to Request Counsel**

Plaintiff's Motions to Request Counsel are before the Court. Docs. 5, 6, 7.

**Legal Standard for Request for Counsel**

The Seventh Circuit has summarized the legal standard that governs Plaintiff's request for counsel as follows:

> Under 28 U.S.C. § 1915(e)(1), a federal court "may request an attorney to represent any person unable to afford counsel." The statute is "entirely permissive." *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007) (en banc). Civil litigants have no constitutional or statutory right to court-appointed counsel, and § 1915(e)(1) "does not authorize the federal courts to make coercive appointments of counsel." *Id.* at 653 (quoting *Mallard v. U.S. Dist. Court for S. Dist. of Iowa*, 490 U.S. 296, 310, 109 S.Ct. 1814, 104 L.Ed.2d 318 (1989)). Rather, the statute "codifies the court's discretionary authority to recruit a lawyer to represent an indigent civil litigant *pro bono publico*." *Id.*

"Almost everyone would benefit from having a lawyer, but there are too many indigent litigants and too few lawyers willing and able to volunteer for these cases." *Olson v. Morgan*, 750 F.3d 708, 711 (7th Cir. 2014). "District courts are thus placed in the unenviable position of identifying, among a sea of people lacking counsel, those who need counsel the most." *Id.*

Accordingly, we have recently explained that "the decision whether to recruit a lawyer for a particular plaintiff is made against the twofold backdrop of a high volume of indigent, pro se litigants (particularly incarcerated individuals) and a small pool, by comparison, of attorneys willing and able to take those cases on pro bono." *Watts v. Kidman*, 42 F.4th 755, 763 (7th Cir. 2022). Based on these and other practical considerations, we have held that district judges should engage in a two-step inquiry when faced with a request for pro bono counsel under § 1915(e)(1), asking first "(1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself?" *Pruitt*, 503 F.3d at 654.

The first step needs no elaboration. Step two "can be complex" and involves a pragmatic judgment about the difficulty of the case and the plaintiff's ability to present it to the court on his own. *Watts*, 42 F.4th at 760. "The inquiries are necessarily intertwined; the difficulty of the case is considered against the plaintiff's litigation capabilities, and those capabilities are examined in light of the challenges specific to the case at hand." *Pruitt*, 503 F.3d at 655. A judge will normally consider "the plaintiff's literacy, communication skills, educational level, and litigation experience" along with any evidence in the record "bearing on the plaintiff's intellectual capacity and psychological history." *Id.* But these are merely factors that are ordinarily relevant. No one factor is "necessary or conclusive." *Id.* at 655 n.9. Indeed, "[t]here are no fixed requirements for determining a plaintiff's competence to litigate his own case." *Id.* at 655. Ultimately, the "inquiry into the plaintiff's capacity to handle his own case is a practical one, made in light of whatever relevant evidence is available on the question." *Id.*

Finally, "the decision whether to recruit pro bono counsel is left to the district court's discretion." *Id.* at 654. Our job is to ensure that this discretion is exercised in accordance with appropriate legal principles. The "question on appellate review is not whether we would have recruited a volunteer lawyer in the circumstances, but whether the district court applied the correct legal standard and reached a reasonable decision based on facts supported by the record." *Id.* at 658.

*Jones v. Anderson*, 116 F.4th 669, 675-76 (7th Cir. 2024). In determining the second step, the Court should view the case through the lens of certain specific factors that the Seventh Circuit has enumerated:

> Though this inquiry must be case-and plaintiff-specific, we have identified circumstances that tend to diminish a prisoner-plaintiff's ability to litigate pro se, such as when: (1) the case reaches later stages of litigation, (2) the plaintiff is transferred to another facility and loses access to relevant witnesses or evidence, (3) the claim depends on the state of mind of the defendant, and (4) expert testimony is necessary to prove the claim.

*Owens v. Wexford Health Sources, et al.*, No. 22-2882, 2024 WL 5242367, at *3 (7th Cir. Dec. 30, 2024), citing *James v. Eli*, 889 F.3d 320, 327-28 (7th Cir. 2018).

### **Analysis as to Request for Counsel**

First, Plaintiff has shown a reasonable attempt to obtain counsel on his own, having written to several attorneys asking for assistance, without success.

Second, Plaintiff is able to represent himself.

Plaintiff's claims are not factually difficult; he alleges the pain care he received was insufficient. Plaintiff has personal knowledge of his claims and treatment and can testify to what he experienced. Written discovery would produce to Plaintiff the relevant written medical and prison records related to his claims.

Plaintiff's claims are also not particularly legally difficult, though all federal litigation is difficult to a degree. He would be required to prove the mental state of the Defendants which makes this consideration somewhat favor a counsel search.

Plaintiff's pleadings are clear, legible, and coherent. Plaintiff's education level is that of a high school graduate, and he appears well able to communicate. There is no

information before the Court that indicates Plaintiff is mentally impaired to the extent that he cannot represent himself. Plaintiff reports he has no legal education or experience.

And considering the circumstances the Seventh Circuit suggested in *Owens*, none weigh heavily in favor of a search for counsel on the specific facts here. The case is at its outset. Plaintiff has been transferred to Lawrence from Danville, but there is nothing before the Court indicating that the transfer would particularly hamper Plaintiff's ability to conduct discovery or otherwise litigate the case. There is a state of mind element to Plaintiff's claims as discussed above. Expert testimony may be implicated in this action, though at this time Plaintiff's allegations, accepted as true, do not state a claim. It appears the overall likelihood of success of Plaintiff's action is much lower than many other lawsuits of this nature.

In an exercise of its discretion, assessing the factors and the record in this case, the Court finds Plaintiff can continue representing himself here.

## II.    Merit Review

The Court must "screen" Plaintiff's complaint, and through such process identify and dismiss any legally insufficient claim, or the entire action if warranted. 28 U.S.C. § 1915A. A claim is legally insufficient if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." *Id.*

The court accepts the factual allegations as true, liberally construing them in the plaintiff's favor. *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013). Conclusory

statements and labels are insufficient—the facts alleged must "state a claim for relief that is plausible on its face." *Alexander v. United States*, 721 F.3d 418, 422 (7th Cir. 2013) (citation omitted).

**Factual Allegations**

Plaintiff names as Defendants Dr. Jonathan Ek, Warden Felicia Adkins, Carol, Divine, Stephanie, Jamie, Jane Doe 1, Jane/John Doe 2, Jane/John Doe 3, Jane/John Doe 4, and Illinois Department of Corrections Danville Correctional Officers and Staff.

Plaintiff was struck by a car in 2011, resulting in the placement of two screws in his right ankle, and nerve damage causing chronic right ankle and lower leg pain.

Plaintiff's claim, broadly, is that from October 2022 until March 2023 he suffered significant pain while under the care of medical personnel at Danville Correctional Center.

The situation unfolded as follows, according to Plaintiff. On October 29, 2022, Plaintiff was seen at healthcare and explained to Carol that the Naproxen and ibuprofen that Jonathan Ek had prescribed were causing Plaintiff stomach pain, so he had stopped taking them. Carol advised Plaintiff that he would be ok and should eat something.

On January 11, 2023, Stephanie told Plaintiff that Ek was discontinuing Plaintiff's gabapentin prescription, a non-narcotic pain medication. The next day, at med line, Divine provided Plaintiff with 500mg Naproxen and 500mg ibuprofen. Divine told Plaintiff that Ek had in fact discontinued Plaintiff's gabapentin prescription.

On January 16, 2023, Ek told Plaintiff that he discontinued Plaintiff's gabapentin prescription because Plaintiff was not taking it. Plaintiff asked about an alternative

treatment plan because the Naproxen and ibuprofen (apparently provided to replace the just-terminated gabapentin) were causing him stomach pain. Ek replied that this was not his problem anymore. Later that day, Plaintiff refused his medication and said the Naproxen was causing stomach pains.

On January 19 Plaintiff submitted an emergency medical request. He was seen on January 24 by Divine, described his pain, indicating it started in his right ankle and traveled to his knee. Divine was unprofessional and advised Plaintiff that he should have thought about that before he decided not to take his medication. Plaintiff said that instead of discontinuing the gabapentin prescription, Ek should have ordered that Plaintiff's medication be opened and floated for consumption. Plaintiff does not allege that he was saving, or not taking, his gabapentin, but his allegation that instead of stopping the prescription he should have received an "open and float" order, or "crush order," indicates there is additional information regarding the circumstances as to the termination of the gabapentin. Plaintiff felt insulted, alleging Divine was calling him stupid and accusing him of trying to get high. He was offended and upset and left the healthcare unit to avoid escalation.

On February 3, 2023, Plaintiff told Stephanie that the ibuprofen was doing nothing to relieve his nerve pain. Stephanie said she could not give him anything else. On February 5, Plaintiff submitted an emergency medical request. On February 13, Plaintiff was seen by Jamie who asked if he was taking any pain medicine since being taken off his prescriptions, Plaintiff said no, and Jamie said she would put in a referral for Plaintiff to be seen by a Nurse Practitioner, but this could take up to three months.

On February 20, Plaintiff's pain had increased to an "unbearable stabbing pain shooting from his ankle to his knee." He continued to take ibuprofen but it did not provide relief. On February 21 he submitted another medical request. On February 23 he submitted an emergency grievance to Warden Felicia Adkins who deemed it an emergency on about February 27. Plaintiff alleges Adkins did not issue instructions to Ek "regarding the relief that Plaintiff requested." On March 6, Plaintiff sent a Kite to Warden Adkins regarding his ongoing medical needs. On March 29, Plaintiff was placed on an emergency transfer to Lawrence Correctional Center.

On April 13 he was seen by an NP at Lawrence who reissued a prescription for gabapentin.

**Analysis**

Plaintiff states an Eighth Amendment claim for deliberate indifference to a serious medical need against Defendant Jonathan Ek and Defendant Nurses Divine, Jamie, and Stephanie. Plaintiff has plausibly alleged that these Defendants were responsible for treating his chronic pain, and knowingly delayed or denied Plaintiff's extreme pain, stating that it was not his problem, care causing months of intense and unnecessary pain. *See Petties v. Carter*, 836 F.3d 722, 729-30 (7th Cir. 2016) (en banc); *Perez v. Fenoglio*, 792 F.3d 768, 779 (7th Cir. 2015) (nurses not allowed to defer to physician if physician's care is inappropriate or questionable).

Plaintiff does not state a claim against Nurse Carol, who saw him before his gabapentin medication was ceased and on one occasion advised him to eat something to quell his stomach pain.

Plaintiff's allegations do not plausibly allege that policies and practices of Wexford, rather than individual misconduct by Ek and certain nurses, was to blame. There is no ongoing injunctive relief to effect as Plaintiff has moved prisons and received different pain management so claims against IDOC for injunctive relief are moot.

Plaintiff's allegations do not state a claim against the remaining staff Defendants. "A layperson's failure to tell the medical staff how to do its job cannot be called deliberate indifference; it is just a form of failing to supply a gratuitous rescue service." *Adams v. Reagle*, 91 F.4th 880, 894-95 (7th Cir. 2024), *cert. denied sub nom. Adams v. Arnold*, 146 S. Ct. 295 (2025) (applying *Burks v. Raemisch*, 555 F.3d 592, 595-96 (7th Cir. 2009)).

Likewise, as to Warden Adkins, Plaintiff's allegations do not support an inference of deliberate indifference. Adkins found Plaintiff's grievances were an emergency, apparently forwarded his kite to Internal Affairs, and effected a transfer to another prison where he received different pain management care aligned with his desires. She was not required to do more and was not qualified to direct the Danville medical staff as to how specifically to treat Plaintiff's pain. She did what was within her authority and Plaintiff ultimately got the change in medical treatment that he sought.

IT IS THEREFORE ORDERED:

1. **Plaintiff's Motion to Request Counsel [5], [6], [7] is DENIED.**

2. **Plaintiff's Motion for Status [8] is DENIED as MOOT.**

3. **Pursuant to its merit review of the Amended Complaint under 28 U.S.C. § 1915A, the Court finds that the plaintiff states an Eighth Amendment claim for deliberate indifference to a serious medical need against Defendant Jonathan Ek and Defendant Nurses Divine, Jamie, and Stephanie. Any**

additional claims shall not be included in the case, except at the Court's discretion on motion by a party for good cause shown or pursuant to Federal Rule of Civil Procedure 15. Plaintiff's allegations against the remaining Defendants do not state a claim and the Clerk is to terminate the remaining Defendants.

4. This case is now in the process of service. The plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give notice to the defendants and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. The plaintiff need not submit any evidence to the court at this time, unless otherwise directed by the court.

5. The court will attempt service on the defendants by mailing each defendant a waiver of service. If a defendant fails to sign and return a waiver of service to the clerk within thirty days after the waiver is sent, the court will take appropriate steps to effect formal service through the U.S. Marshals service on that defendant and will require that defendant to pay the full costs of formal service pursuant to Federal Rule of Civil Procedure 4(d)(2).

6. With respect to a defendant who no longer works at the address provided by the plaintiff, the entity for whom that defendant worked while at that address shall provide to the clerk said defendant's current work address, or, if not known, said defendant's forwarding address. This information shall be used only for effectuating service. Documentation of forwarding addresses shall be retained only by the clerk and shall not be maintained in the public docket nor disclosed by the clerk.

7. The defendants shall file an answer within 60 days of the date the waiver is sent by the clerk. A motion to dismiss is not an answer. The answer should include all defenses appropriate under the Federal Rules. The answer and later pleadings shall be to the issues stated in this order. Generally, an answer sets out the defendants' positions. The court does not rule on the merits of those positions unless a motion is filed by the defendants. Therefore, no response to the answer is necessary or will be considered. After the defendants have been served and have answered, the court will enter an order setting discovery and dispositive motion deadlines.

8. This district uses electronic filing, which means that, after defense counsel has filed an appearance, defense counsel will automatically receive electronic notice of any motion or other paper filed by the plaintiff with the clerk. The plaintiff does not need to mail to defense counsel copies of motions and other papers that the plaintiff has filed with the clerk. However, this does not apply to discovery requests and responses.

**Discovery requests and responses are NOT filed with the clerk. The plaintiff must mail discovery requests and responses directly to counsel for the appropriate defendant. Discovery requests or responses sent to the clerk will be returned unfiled unless they are attached to and the subject of a motion to compel. Discovery does not begin until the court has entered a scheduling order, which will explain the discovery process in more detail.**

9. **Counsel for the defendants is hereby granted leave to depose the plaintiff. Counsel for the defendants shall arrange the time for the deposition.**

10. **The plaintiff shall immediately notify the court, in writing, of any change in mailing address and telephone number. The plaintiff's failure to notify the court of a change in mailing address or phone number will result in dismissal of this lawsuit.**

11. **The clerk is directed to enter the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.**

Entered this 2nd day of February, 2026.

> *s/Michael M. Mihm*
> MICHAEL M. MIHM
> UNITED STATES DISTRICT JUDGE